# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYLVIA TORAN, | Case No. 1:16-cv-00036-SAB |
| Plaintiff, | ORDER GRANTING IN PART PLAINTIFF'S SOCIAL SECURITY APPEAL |
| v. | (ECF Nos. 14, 16, 17) |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

## I.

## INTRODUCTION

Plaintiff Sylvia Toran ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability benefits and supplemental security income pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from depression, carpal tunnel syndrome ("CTS"), cervicalgia, cervical disc displacement, spinal stenosis, cervicogenic headaches, degenerative disc disease in her cervical and lumbar spine, and bulging discs at C3-C4, C4-C5 and L4-L5. For the reasons set

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge. (See ECF Nos. 6, 8.)

1

forth below, Plaintiff's Social Security appeal shall be granted in part.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for disability benefits on May 23, 2012, and an application for supplemental security income on May 31, 2012, alleging disability in both beginning on January 8, 2007.[2] (AR 147-48, 153-60.) Plaintiff's applications were initially denied on September 14, 2012, and denied upon reconsideration on May 8, 2013. (AR 64-69, 72-78.) Plaintiff requested and received a hearing before Administrative Law Judge Thomas Gaye ("the ALJ"). Plaintiff appeared for a hearing on May 1, 2014. (AR 38-55.) On June 12, 2014, the ALJ found that Plaintiff was not disabled. (AR 22-32.) The Appeals Council denied Plaintiff's request for review on November 9, 2015. (AR 5-9.) On February 22, 2016, the Appeals Council denied Plaintiff's request to reopen the prior decision and granted Plaintiff an extension of time to file a civil action. (AR 1-2.)

### A.   Hearing Testimony

Plaintiff testified at the May 1, 2014 hearing and was represented by counsel. (AR 38-55.) Plaintiff's counsel moved to amend the alleged onset date to December 21, 2011. (AR 42.) Plaintiff was receiving unemployment, but around December 2011, it changed to state disability. (AR 43.)

Plaintiff was 54 years old at the time of the hearing. (AR 44.) Plaintiff was wearing a wrist support on her right wrist for her CTS. (AR 44.) She struggles with combing her hair. (AR 44.) She says that she alternates using hands, so that when one "starts giving out on [her], [she] start[s] using [the other one]." (AR 44.)

Plaintiff testified that she is always in pain, whether it is her neck, her lower back, or a combination. (AR 48.) She cannot work because of headaches that she gets from the pain and being tired. (AR 50.) She gets headaches twice a day that last for three to four hours. (AR 50.)

Plaintiff's knee gave out one time a year prior to the hearing when she was leaving her

---

[2] During the hearing, Plaintiff's counsel moved to amend the alleged onset date to December 21, 2011.

2

house and about to take a step which caused her to fall backwards and hit her head. (AR 45.) At the time of her hearing, Plaintiff's knee had sharp pains throughout the day, would get swollen, and was very painful at night. (AR 45.) When she was asked about treatment for her knee, Plaintiff indicated that Dr. Tawnya Dozier, her doctor for 5 years, is focusing on her stress and depression first and then will "get back to concentrating on the neck area and the lower back." (AR 45-46.) Plaintiff then answered that she is not receiving any treatment for her knee. (AR 46.)

She is able to look downward with her neck without any problems for about 10 minutes. (AR 48.) She has to rotate sitting, standing, and laying down every day. (AR 48.) She can sit for 20 minutes without any problems, but then her back and neck start to hurt and the right side of her thigh starts to burn, so she has to lean to the left or get up and walk for a bit. (AR 50.) She can stand for 15 minutes without any problems, but then she gets sharp pains in her right heel and in her lower back. (AR 52-53.)

It is hard for her to lift a gallon of milk. (AR 52.) She has to lift it with two hands and put one hand underneath because she has been dropping things. (AR 52.)

She does not drive because she cannot turn her neck and her neck hurts. (AR 48-49.) During the day, she alternates sitting, reading, standing, and laying down. (AR 50.) She can read without any problems for about 10 minutes. (AR 50.)

Dr. Ahmed in Roseville told her that she needs nerve fusion surgery. (AR 49.) Since her doctor recommended fusion at C5-C6 if she was to fail conservative care, she had therapy and shots. (AR 49.) Physical therapy did not help. (AR 49-50.) The doctors have given her medication for the pain, which somewhat helps. (AR 51.)[3]

**B.  ALJ Findings**

The ALJ made the following findings of fact and conclusions of law:

- Plaintiff meets the insured status requirements through September 30, 2014;

---

[3] A Vocational Expert ("VE") also testified at the hearing. However, Plaintiff's challenges to the non-disability finding in this action do not involve the VE's testimony and findings, so the Court does not summarize the VE's testimony.

- Plaintiff has not engaged in substantial gainful activity since December 21, 2011, the alleged onset date;
- Plaintiff has the following severe impairments: degenerative disc disease of the cervical and lumbar spine and CTS;
- Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments;
- Plaintiff has the residual functional capacity ("RFC") to perform light work except only occasionally use hands for gross manipulation;
- Plaintiff is unable to perform any past relevant work;
- Plaintiff was born on November 4, 1959, and was 52 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date;
- Plaintiff has at least a high school education and is able to communicate in English;
- Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is "not disabled," whether or not Plaintiff has transferable job skils;
- Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform; and
- Plaintiff has not been under a disability, as defined in the Social Security Act, from December 21, 2011, through the date of the decision.

(AR 22-32.)

## III.

## LEGAL STANDARD

An individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). The Court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be

4

1  disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v.
2  Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means more than a
3  scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996)
4  (internal quotations and citations omitted). "Substantial evidence is 'such relevant evidence as a
5  reasonable mind might accept as adequate to support a conclusion.' " Id. (quoting Richardson v.
6  Perales, 402 U.S. 389, 401 (1971)). "[A] reviewing court must consider the entire record as a
7  whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill,
8  698 F.3d at 1159 (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)).
9  However, it is not this Court's function to second guess the ALJ's conclusions and substitute the
10 Court's judgment for the ALJ's.  See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)
11 ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's
12 conclusion that must be upheld.")

## IV.

## DISCUSSION AND ANALYSIS

15    Plaintiff raises two challenges to the ALJ's non-disability finding. Plaintiff argues that
16 the ALJ failed to give clear and convincing reasons supported by substantial evidence for
17 rejecting her testimony. Plaintiff also argues that the ALJ failed to give reasons for rejecting her
18 treating physician, Dr. John Jackson's opinion.

19    **A.   The ALJ Did Not Err in Discrediting Plaintiff's Testimony**

20    First, Plaintiff argues that the reasons the ALJ gave for discrediting her are legally
21 inadequate because they cannot survive the specific, clear and convincing standard of review.
22 Defendant counters that the ALJ properly found Plaintiff's testimony not fully credible based on
23 the fact that Plaintiff received conservative treatment, Plaintiff's symptoms were unsupported by
24 the objective medical evidence, and Plaintiff's daily activities did not support her testimony. In
25 reply, Plaintiff asserts that the Court should not consider Defendant's post hoc rationalizations.

26    "An ALJ is not required to believe every allegation of disabling pain or other non-
27 exertional impairment." Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007) (internal punctuation
28 and citations omitted). Determining whether a claimant's testimony regarding subjective pain or

symptoms is credible, requires the ALJ to engage in a two-step analysis. Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012). The ALJ must first determine if "the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal punctuation and citations omitted). This does not require the claimant to show that her impairment could be expected to cause the severity of the symptoms that are alleged, but only that it reasonably could have caused some degree of symptoms. Smolen, 80 F.3d at 1282.

Second, if the first test is met and there is no evidence of malingering, the ALJ can only reject the claimant's testimony regarding the severity of his symptoms by offering "clear and convincing reasons" for the adverse credibility finding. Carmickle v. Commissioner of Social Security, 533 F.3d 1155, 1160 (9th Cir. 2008). The ALJ must specifically make findings that support this conclusion and the findings must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) (internal punctuation and citations omitted). Factors that may be considered in assessing a claimant's subjective pain and symptom testimony include the claimant's daily activities; the location, duration, intensity and frequency of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other measures or treatment used for relief; functional restrictions; and other relevant factors. See Lingenfelter, 504 F.3d at 1040; Thomas v. Barnhart, 238 F.3d 947, 958 (9th Cir. 2002). In assessing the claimant's credibility, the ALJ may also consider "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; [and] (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment. . . ." Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting Smolen, 80 F.3d at 1284).

Here, the ALJ found that Plaintiff had medically determinable impairments that could

reasonably be expected to cause the alleged symptoms. (AR 29.) However, the ALJ found that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (AR 29.)

### 1. The ALJ Did Not Err in Finding that Plaintiff Had a Conservative Course of Treatment

Plaintiff argues that the ALJ failed to explain why her treatment was too conservative to support her complaints. Plaintiff also argues that the record does not support this finding. Defendant counters that the ALJ's finding that Plaintiff received only conservative treatment despite her claims of a disabling level of impairment may also support an adverse credibility finding.

Evidence of conservative treatment is sufficient to discount a claimant's testimony regarding the severity of the impairment. Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007); Tommasetti, 533 F.3d at 1039-40.

Here, the ALJ found that "[Plaintiff] has a history of chronic neck and back pain that has been treated conservatively with medication, steroid injections and physical therapy." (AR 29.) In November 2011, Plaintiff received prescriptions for a muscle relaxant, a nonsteroidal anti-inflammatory drug ("NSAID"), and an opioid pain reliever. (AR 350-51.) On December 2011, Dr. Jackson referred Plaintiff to physical therapy for her cervical spine, which he decided to address first before her lumbar spine. (AR 349, 512, 569.) Plaintiff was seen by physical therapy for a few months ending in October 2012 and Plaintiff noted good relief, but the pain then returned. (AR 569.) On October 15, 2012, Plaintiff was given an injection of ketorolac, an NSAID.[4] (AR 501.)

In April 2013, Dr. Chehrazi recommended that Plaintiff undergo a course of epidural steroid injections and another round of physical therapy, and if that failed, she would be a candidate for fusion with fixation at C5-C6. (AR 520.) Dr. Chehrazi noted that the success rate for relief of her symptoms is not good and that surgery can be considered after all conservative

---

[4] See https://www.drugs.com/cdi/ketorolac.html (last visited Feb. 14, 2017).

1 measures have failed. (AR 520.) Plaintiff started physical therapy in June 2013. (AR 572, 576.)
2 An October 17, 2013 physical therapy note states that Plaintiff was being discharged to home
3 exercise program because she reported that she was moving out of the Auburn area to San Jose
4 by the next Monday. (AR 563.) A July 8, 2013 treatment note states that Plaintiff had a
5 cortisone injection on July 2, 2013. (AR 576.) She felt that she had improved 10% since the
6 injection. (AR 576.) Plaintiff does not point to, and the Court does not find in the record, any
7 evidence of other cortisone injections in 2013.

8       While Dr. Chehrazi noted that she would be a candidate for fusion with fixation at C5-
9 C6, he specifically noted that that was only if conservative methods failed. (AR 520.) Plaintiff
10 was treated with medication, steroid injections, and physical therapy, and there is no indication
11 that she went back to schedule or inquire about surgery because the conservative methods had
12 failed. Dr. Chehrazi's recommendation shows that there was a more aggressive treatment option
13 available, but Plaintiff was first told to try conservative methods of treatment. Therefore, it was
14 proper for the ALJ to find that Plaintiff's neck and back pain has been treated conservatively.

15       The ALJ also found that Plaintiff has received limited treatment for her right wrist pain
16 and CTS. (AR 29.) The ALJ discussed that the treatment for Plaintiff's CTS has been nighttime
17 splints. (AR 27, 612.) The Court notes that Plaintiff also received a referral for physical and
18 occupational therapy for Plaintiff's CTS in April 2011. (AR 362.) Therefore, it was proper for
19 the ALJ to find that Plaintiff has received limited treatment for her right wrist pain and CTS.

20       Thus, the Court finds that conservative treatment is a clear and convincing reason to
21 discredit Plaintiff that is supported by substantial evidence in the record.

22     2.   <u>The ALJ Properly Discredited Plaintiff Because the Medical Findings Do Not Support Plaintiff's Allegations</u>
23

24       Plaintiff argues that the ALJ erred in finding that there was a lack of supporting objective
25 evidence for Plaintiff's complaints. Plaintiff asserts that the ALJ failed to mention that detailed
26 examinations had shown Plaintiff was significantly limited by her cervical impairment and such
27 limitations had worsened between September 2012 and June 2013. (AR 455, 571-72.) Plaintiff
28 also argues that none of the physicians who examined or treated her expressed any doubt about

8

the veracity of her complaints.[5] Defendant counters that Plaintiff is arguing for a more favorable interpretation of the evidence, but provides little more than an incomplete view of the ALJ's credibility reasoning and a difference of opinion. In reply, Plaintiff contends that the ALJ did not link Plaintiff's MRI to any particular testimony and the comment that objective evidence showed largely minor disc degeneration is misleading.

Plaintiff points out that Dr. Chehrazi noted Plaintiff's MRI showed a "frank disc herniation" at C5-C6 and indicated Plaintiff would be a candidate for cervical fusion surgery if the treatment he recommended was ineffective. (AR 520.) Plaintiff also cites to Regennitter v. Comm'r of Soc. Sec. Admin., 166 F.3d 1294 (9th Cir. 1999), to support her argument that the lack of doubt expressed by her physicians undermines the ALJ's findings that her complaints were not supported by objective evidence.

The determination that a claimant's complaints are inconsistent with clinical evaluations can satisfy the requirement of stating a clear and convincing reason for discrediting the claimant's testimony. Regennitter, 166 F.3d at 1297. "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)).

In Regennitter, the Ninth Circuit stated several reasons why the ALJ's finding that plaintiff's complaints are inconsistent with clinical observations could not satisfy the clear and convincing standard for rejecting plaintiff's testimony. Id. at 1297-98. The Ninth Circuit first noted that the ALJ did not specify what complaints were contradicted by what clinical observations. Id. at 1297 (citing Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). The Ninth Circuit then recognized that the ALJ had noted that an orthopedic examiner found no severe objective neurological or orthopedic deficit, but the examiner did not opine that this was

---

[5] While Plaintiff also argues that the finding that objective evidence does not support Plaintiff's complaints cannot stand alone as the only legally adequate reason for rejecting her testimony, the Court finds that the ALJ properly relied upon Plaintiff's conservative treatment and activities of daily living to discredit Plaintiff. Therefore, lack of support in the objective medical findings would not be the sole reason given by the ALJ for discrediting Plaintiff.

inconsistent with the plaintiff's complaints. Regennitter, 166 F.3d at 1297. The Ninth Circuit also cited an examining physician and a treating physician who found that the plaintiff's complaints were reasonably consistent or supported by medically acceptable clinical or laboratory diagnostic techniques. Id. at 1297-98.

However, here, the medical evidence in the record does not support the severity of Plaintiff's allegations. Further, there are no physicians who specifically opined that the severity of Plaintiff's alleged limitations was supported by the medical evidence, and the ALJ specified medical evidence in the record that does not support Plaintiff's allegations. The ALJ found that "[t]he medical evidence of record does not entirely support the credibility of [Plaintiff's] allegations regarding her impairments. The objective medical findings reveal some limitations, but not to the extent alleged by [Plaintiff]." (AR 29.) The ALJ also found that "[t]he objective medical evidence, including the MRI of [Plaintiff's] cervical and lumbar spines does not support [Plaintiff's] allegations of severity. The objective evidence revealed largely minor disc degeneration." (AR 29.) As for Plaintiff's right wrist pain and CTS, the ALJ found that the record shows that she has had limited diagnosis for this condition and "EMG studies revealed only mild evidence of this condition." (AR 29.)

On August 17, 2012, Dr. C. Eskander, an agency reviewing physician, noted that Plaintiff's February 2011 EMG showed only mild right CTS, February 2011 lumbar spine x-ray had no significant findings, and November 2011 cervical x-ray showed minimal degenerative joint disease. (AR 355, 364, 423, 613.) Dr. Eskander also noted that Plaintiff had physical examinations with good cervical and lumbar spine range of motion, intact neurological functions, negative straight leg raise test, negative Tinel's and Phalen's tests. (AR 345, 349, 423.) Dr. Eskander found that Plaintiff was only partially credible regarding symptoms because she had intact neurological examinations in spite of lumbar and cervical spine degeneration, no evidence of CTS with the EMG showing only mild right CTS and physical examinations did not have any significant findings. (AR 425.)

On May 8, 2013, Dr. Maria M. Legarda, an agency reviewing physician, noted that there had been a change in Plaintiff's condition in September 2012 which Plaintiff said was,

1  "[C]onditions are still present. Pain is still severe in lower back and neck." (AR 265, 544.) Dr.
2  Legarda also noted that in September 2012, Plaintiff had a new limitation, which was that she
3  needs assistance getting dressed. (AR 544.) Dr. Legarda stated that there was additional
4  evidence showing that Plaintiff had physical therapy in late 2012 and that there was a
5  recommendation for epidural steroid injections and more physical therapy. (AR 501, 520, 550.)
6  Dr. Legarda noted that the neurosurgery consultation in January 2013 for Plaintiff's neck pain
7  with headaches showed normal exam, the cervical MRI showed mild multilevel degenerative
8  disc disease with disc herniation at C5-C6 centrally without cord or foraminal compression, the
9  cervical x-ray showed no instability, the April 9, 2013 examination showed that Plaintiff was
10 stable neurologically, the March 2013 EMG was normal, and the examinations are basically
11 normal. (AR 519-526, 550.)

12 Even assuming that the ALJ's characterization of the medical evidence in the record is
13 not the only reasonable explanation, if the ALJ's interpretation is reasonable and supported by
14 substantial evidence, then it is not the Court's role to second-guess it. See Rollins, 261 F.3d at
15 857. Therefore, the Court finds that there is substantial support for the ALJ's determination that
16 Plaintiff's allegations regarding the severity of her limitations are not supported by the objective
17 evidence in the medical record.

       3.    <u>The ALJ Did Not Err in Finding that Plaintiff's Activities of Daily Living Are Inconsistent with Her Alleged Limitations</u>

20 Plaintiff argues that the ALJ did not elaborate on which of her daily activities conflicted
21 with specific parts of her testimony. Defendant counters that the ALJ pointed out inconsistent
22 statements concerning Plaintiff's activities of daily living, including her ability to read books,
23 perform light housekeeping like dishes and laundry, watch TV, work on puzzles, cook, barbeque
24 on weekends, and shop occasionally. (AR 27, 443.) Defendant provides as an example that
25 Plaintiff's testimony that she could only look down for 10 minutes at a time is contradicted by
26 her statements that she enjoys working on puzzles and reading, which Defendant asserts are
27 activities that involve the ability to look down for more than 10 minutes. In reply, Plaintiff
28 contends that Defendant offers arguments not offered by the ALJ. Plaintiff also asserts that

1 Defendant cites no evidence that Plaintiff performed these activities without changing positions, taking breaks, or looking down while performing these activities.

The ALJ discredited Plaintiff because she "reported largely normal activities of daily living." (AR 29.) The ALJ cited in his opinion to the activities of daily living section of consultative psychological examiner, Dr. Travis Owens's evaluation. (AR 27, 443.) Plaintiff told Dr. Owens that during the day she will "have [her] coffee and read the Bible. Then [she] will wash the dishes. [She] can't do major chores like mopping. [She] do[es] the laundry and put the [sic] away. [She] watch[es] TV some. [She] will do puzzles and read." (AR 443.) The ALJ also noted several limitations that Plaintiff alleged, such as her inability to drive because she cannot turn her neck from side to side. (AR 27.) Plaintiff testified that she can look downward with her neck for 10 minutes without any problems. (AR 48.) She then stated, "[a]nd then I have to - - like, I have to rotate every day, like from sitting, standing, or laying down." (AR 48.)

The Court agrees with Defendant that Plaintiff's testimony that she does puzzles contradicts her testimony regarding her neck limitations. Therefore, the Court finds that there is substantial evidence in the record to support the ALJ's finding that Plaintiff's activities of daily living are a reason to discredit her testimony.

Accordingly, the Court finds that the ALJ did not err in discrediting Plaintiff's testimony, because he provided clear and convincing reasons supported by substantial evidence for discrediting Plaintiff.

**B.     The ALJ Erred in Rejecting Dr. Jackson's Opinion**

Second, Plaintiff argues that the ALJ erred by failing to consider the opinion of her treating physician, Dr. Jackson, that she was disabled. Defendant counters that the ALJ actually did review and discuss Dr. Jackson's treatment records in the decision and during the administrative hearing. Defendant asserts that the ALJ appropriately accounted for Dr. Jackson's opinion about Plaintiff's impairments by limiting her to a reduced range of light work and the ALJ was not required to credit physician opinions falling outside the scope of a medical opinion. Further, Defendant contends that any error in not specifically identifying Dr. Jackson in the decision was harmless because Dr. Jackson did not specify any limitations that would be

attributable to Plaintiff's impairments, the ALJ was entitled to rely upon the state agency physician's opinions in formulating the RFC, and the ALJ was not bound by Dr. Jackson's opinion that Plaintiff was disabled under the state disability system. In her reply, Plaintiff argues that the ALJ failed to mention Dr. Jackson or acknowledge that he was a treating physician, much less give any reasons for rejecting his opinion. Plaintiff also argues that the state agency physicians' opinions alone cannot serve to reject a treating physician's opinion.

The weight to be given to medical opinions depends upon whether the opinion is proffered by a treating, examining, or non-examining professional. See Lester, 81 F.3d at 830-831. In general a treating physician's opinion is entitled to greater weight than that of a nontreating physician because "he is employed to cure and has a greater opportunity to know and observe the patient as an individual." Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995) (citations omitted). If a treating physician's opinion is contradicted by another doctor, it may be rejected only for "specific and legitimate reasons" supported by substantial evidence in the record. Ryan v. Commissioner of Social Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) (quoting Bayless v. Barnhart, 427 F.3d 1121, 1216 (9th Cir. 2005)). The contrary opinion of a non-examining expert is not sufficient by itself to constitute a specific, legitimate reason for rejecting a treating or examining physician' opinion, however, "it may constitute substantial evidence when it is consistent with other independent evidence in the record." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).

However, medical opinions are not the only opinions that physicians render. "In disability benefits cases ... physicians may render medical, clinical opinions, or they may render opinions on the ultimate issue of disability—the claimant's ability to perform work." Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted)). In Marsh, the Ninth Circuit noted that the treating source's opinion was a "medical opinion" because it contained statements from the treating source that reflect judgments about the nature and severity of the claimant's impairment(s), including symptoms, diagnosis and prognosis, what claimant can still do despite her impairment(s), and physical or mental restrictions. Marsh v. Colvin, 792 F.3d 1170, 1172 n.1 (9th Cir. 2015) (citing

20 C.F.R. § 404.1527). A treating physician's disability opinion is not entitled to controlling weight or any special significance, because the ultimate issue of disability is for the Commissioner to make, taking into account a variety of factors. See Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

The ALJ is not bound by a physician's uncontroverted opinion on the ultimate issue of disability, but he or she must present clear and convincing reasons for rejecting the opinion. See Montijo v. Sec'y of Health & Human Servs., 729 F.2d 599, 601 (9th Cir. 1984) (citing 20 C.F.R. § 404.1527); Rhodes v. Schweiker, 660 F.2d 722, 723 (9th Cir. 1981); Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975)). Even if the physician's opinion on the ultimate issue of disability is controverted, it can only be rejected with specific and legitimate reasons supported by substantial evidence. See Reddick, 157 F.3d at 725 (citing Lester, 81 F.3d at 830).

Here, the ALJ did not specifically assign a weight to Dr. Jackson's opinion and did not even mention Dr. Jackson by name in the decision. (AR 22-32.) However, the ALJ did reference Dr. Jackson's treatment notes in a discussion of the medical evidence in the record. (AR 27-28.) In a December 21, 2011 treatment note, Dr. Jackson noted that Plaintiff has CTS on the right side and "[s]he is disabled form work as a caretaker." (AR 349.) On August 2, 2012, Dr. Jackson continued Plaintiff's disability until November 2, 2012. (AR 512.) The August 2, 2012 treatment note indicates that Plaintiff requested completion of her disability papers because of ongoing neck and lower back pain. (AR 512.)

Even if Dr. Jackson's opinion is an opinion on the ultimate issue of disability rather than a medical opinion, the ALJ still was required to provide at least specific and legitimate reasons to reject it.[6] See 20 C.F.R. § 404.1527(d); Reddick, 157 F.3d at 725 (citing Lester, 81 F.3d at 830). Therefore, the Court finds that the ALJ erred.

Defendant argues that any error is harmless. The harmless error inquiry is "whether the ALJ's decision remains legally valid, despite such error." Carmickle, 533 F.3d at 1162. In order to find an error harmless, the Court must be able to confidently conclude that no reasonable ALJ,

---

[6] The Court recognizes that Dr. Jackson's opinion does not assess any functional limitations and that the only opinions in the record regarding Plaintiff's physical functional limitations are by the reviewing agency physicians.

when fully crediting the opinion, could have reached a different disability determination. See Stout v. Comm'r of Soc. Sec. Admin., 454 F.3d 1050, 1056 (9th Cir. 2006). A district court may only apply harmless error in a way that affirms the agency on a ground invoked by the ALJ. Marsh, 792 F.3d at 1172 (citing Stout, 454 F.3d at 1054). The Ninth Circuit has held that "where the magnitude of an ALJ error is more significant, then the degree of certainty of harmlessness must also be heightened before an error can be determined to be harmless. In other words, the more serious the ALJ's error, the more difficult it should be to show the error was harmless." Marsh, 792 F.3d at 1173 (finding that it could not confidently conclude that the error was harmless in those circumstances, where the ALJ did not mention a treating source's medical opinion that the plaintiff's condition rendered her "pretty much nonfunctional").

Defendant is correct that the ALJ gave great weight to agency medical consultants Dr. Legarda and Dr. Eskander in support of the ALJ's RFC assessment. (AR 29.) However, here, the Court cannot "confidently conclude" that the ALJ's error was harmless. Although he mentioned Dr. Jackson's examination findings and notations in treatment notes, it is unclear from the ALJ's decision that the ALJ even considered Dr. Jackson's opinion on the ultimate issue of disability when evaluating the medical evidence and formulating his RFC. Therefore, the error is not harmless and the case must be remanded.

The Court has the discretion to remand a case for either an award of benefits or for additional evidence. Smolen, 80 F.3d at 1292. The remand should be for "an award of benefits where (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." Id. District courts have flexibility in applying the credit as true rule. Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003).

Further, "[a] claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be." Strauss v. Comm'r of the Soc. Sec. Admin., 635 F.3d 1135, 1138 (9th Cir. 2011). The Ninth Circuit has recently clarified that "we may remand on an open record for further proceedings 'when the record as a whole creates

serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act.' " Burrell v. Colvin, 775 F.3d 1133, 1141 (9th Cir. 2014) (quoting Garrison, 759 at 1020).

Here, the record casts doubt on whether Plaintiff is disabled. As noted above, there are objective findings in the record that do not support Plaintiff's claimed limitations. The Court finds that this action should be remanded for the ALJ to consider Dr. Jackson's opinion along with the other evidence in the record in formulating Plaintiff's RFC, to state the weight he is giving Dr. Jackson's opinion, and the reasons why he is giving Dr. Jackson's opinion that weight. The ALJ may wish to further develop the record by consultative examination or other means, and determine whether Plaintiff's residual functional capacity, which may change on remand, when considered with Plaintiff's age, education, and work experience, would allow Plaintiff to perform work that exists in significant numbers in the national economy.

## V.

## ORDER

Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is GRANTED IN PART. This action is remanded for further proceedings consistent with this order. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:  **March 6, 2017**

UNITED STATES MAGISTRATE JUDGE